No. 30,204.

ANN EVANS, JACK M. EVANS and BILLY E. EVANS, by IRA E. CARNES, as Guardian, etc., *Appellees,* v. O. A. TIBBETTS and A. E. TIBBETTS, Partners doing business as TIBBETTS & TIBBETTS, and THE STANDARD ACCIDENT INSURANCE COMPANY, *Appellants.*

(4 P. 2d 399.)

Opinion filed November 7, 1931.

*John A. McGuire* and *George L. Gordon,* both of Kansas City, Mo., for the appellants.

*G. R. Gard* and *F. J. Oyler,* both of Iola, for appellee Ann Evans; *S. T. Seaton,* of Olathe, for appellee Ira E. Carnes.

132

The opinion of the court was delivered by

HARVEY, J.: This is a compensation proceeding by dependents of a deceased workman. The compensation commissioner heard the evidence, made findings of fact and awarded compensation. The district court approved and sustained the findings and award. The employers and the insurance carrier have appealed.

The employers, Tibbetts & Tibbetts, a partnership, with their headquarters and principal place of business at Olathe, Kan., were engaged in the business of hauling and distributing pipe for use in constructing pipe lines for the transportation of oil, gas and the like. The work is properly classified as engineering work, as defined by our statute (R. S. 1930 Supp. 44-508 [g]). The work was done under contract, and their field of operation included the state of Kansas and extended into several other states, including Oklahoma, Texas and Mississippi. The commissioner and trial court found that the contract of employment was made in Kansas and that the workman's accidental death occurred in the state of Mississippi. No question is made about the manner of the death of the workman, or that the claimants were dependents, or the amount of the award, if any award should be made. One section of our compensation act reads in part:

". . . this act shall apply also to injuries sustained outside the state where the contract of employment was made within the state, unless such contract otherwise specially provides." (R. S. 1930 Supp. 44-506.)

Appellants contend that there was no substantial competent evidence to support the finding of the trial court that the contract of employment was made in Kansas.

The workman, Marion Evans, was a resident of Chanute, Kan. In August, 1927, he went to the camp of Tibbetts & Tibbetts at Corwin, Kan., seeking work, and stayed at the camp a day or two without pay, and was either sent by some one there, or went on his own accord, to the camp of Tibbetts & Tibbetts at Woodward, Okla., where he was put to work by the foreman there in charge. His name first appears on the pay roll at Woodward, Okla. He continued to work there, driving a truck, until the 9th of September, when Mr. Tibbetts took him off the truck he was driving and put him to driving a larger truck working near Wynoka, Okla. He continued in the employment of Tibbetts & Tibbetts, under different foremen, until May 17, 1928, when he quit work and came to his home in Kansas. It is the contention of appellants that Evans

simply took a leave of absence. But the commissioner found that his previous employment ceased when he quit work on May 17, 1928, and came home. The employment had been by parol, for no definite length of time. There appears to have been no definite agreement that he would go back to work at a later date. He was not paid for that time. Certainly, if he had taken up other employment there would have been no breach of any contract he had with Tibbetts & Tibbetts, hence there is reason to conclude that the finding was correct.

There was a further finding that after Evans had been off work about a month he was again hired by Tibbetts & Tibbetts in Kansas for work outside the state. The testimony with reference to that, however, was not abstracted. With respect to it appellants appear to rest on their contention that he was in their employment all the time he was off duty. We have previously determined the facts warranted a finding to the contrary.

Sometime in the latter part of June, 1928, Evans and fifteen or more other truck drivers employed by Tibbetts & Tibbetts were brought into Olathe, with their trucks, which Tibbetts & Tibbetts desired to repair at their shops there while waiting for new contracts. While this was being done they had no work for Evans in pipe-line construction work, but Tibbetts & Tibbetts, or one of them, owned a farm near Olathe, and Mr. Tibbetts sent Marion Evans to the farm, where he worked at plowing corn and other farm work for about ten days. Had he been injured at that work he would not have been under the workmen's compensation act (R. S. 1930 Supp. 44-505). When new contracts were obtained, and about July 5, 1928, they had Marion Evans come in from the farm and again take up his work of driving a truck. The immediate work they had to do was outside the state of Kansas. He continued in that work until his death on October 29. The finding was that this was a new hiring for work under the compensation act on July 5, 1928. When he was put to work on the farm there appears to have been no agreement as to how long he would do farm work, or when, if at all, he would be put at the other work; and whether he was put at the other work appears to have depended on whether or not Tibbetts & Tibbetts got new contracts they were then negotiating; hence there is reason for the finding that there was a new contract of employment. It cannot be said that the finding in this respect has no evidence to support it.

It is argued by appellants that the death of the workman having occurred in another state, even if his employment was in Kansas, the compensation law of this state would not apply unless the contract of employment was for work to be done in Kansas, some incidental feature of which only was performed outside of the state; that the statute would not apply to a contract made in Kansas where the work was to be performed outside the state. This argument does not conform to our statute, previously quoted.

Appellants contend that there was no showing in the court below that Tibbetts & Tibbetts employed as many as five men continuously, and argue that in the absence of such a showing the compensation act does not apply (R. S. 1930 Supp. 44-507). There are two answers to this: (1) That point was not raised in the court below, and appellants are in no position to raise it here for the first time; and (2) The evidence disclosed Tibbetts & Tibbetts had employed more than five men continuously in 1928; that they had fifteen to twenty gangs working for them, an unloading gang consisting of five or six men, and a string gang of from eight to twenty men. They worked in Kansas and other states. It is true there is no definite showing as to just how many were working in Kansas, but if the question had been raised in the court below the evidence would have justified a finding that there were five or more men employed in Kansas.

Appellants contend "the commissioner had no jurisdiction to litigate or pass upon controversies arising out of insurance policies." We do not understand from the record that the commissioner attempted to do so. What happened was this: The employers were contending that they were not under the workmen's compensation law. In addition to developing what their business was, which showed them to be under the law, there was introduced in evidence the parts of the insurance contracts which stipulated, among other things, that the employer agreed that he was bound by the workmen's compensation law of Kansas. This was introduced simply as evidence tending to show not only that the parties were under the workmen's compensation law, but that they so represented and agreed and bound themselves. It was competent evidence for that purpose. Employers are required to carry insurance, unless they become self-insurers (R. S. 1930 Supp. 44-532), and the insurer is a party to all agreements or proceedings under the act (R. S. 1930 Supp. 44-559).

The judgment of the court below is affirmed.