The FIRST NATIONAL BANK OF BEAVER, OKLAHOMA, Plaintiff-Appellant,

v.

Mac J. HOUGH and Leona B. Hough, Defendants-Appellees.

No. 78–1972.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 18, 1980.

Decided March 5, 1981.

M. Ralph Baehr, Wichita, Kan. (John B. Rathmel, Wichita, Kan., with him on brief), Render & Kamas, Wichita, Kan., for plaintiff-appellant.

Donald W. Bostwick, Wichita, Kan. (Laurence A. Stanton, Wichita, Kan., on brief), Adams, Jones, Robinson & Malone, Wichita, Kan., for defendants-appellees.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Plaintiff, a bank, brought this diversity action to recover from defendants a debt due and owing on a promissory note allegedly executed for defendants by their agent. After a trial to the court, judgment was entered for defendants, and the bank appealed to this court.

In 1972, defendants began investing in the cattle operations of the McKinney Cattle Company. For the most part, defendants' dealings with the McKinney Cattle Company consisted of their delivering money to the company in return for which cattle would be purchased, fed, cared for, and sold by the company with a guaranteed profit returned to defendants.

On November 1, 1973, defendants executed powers of attorney which provided in part:

KNOW ALL MEN BY THESE PRESENTS, that the undersigned hereby constitutes and appoints Wallace G. McKinney and John C. Shaft, residents of the State of Kansas, the true and lawful attorney-in-fact of the undersigned . . . .

On January 15, 1974, McKinney, acting alone, contacted the bank and executed a one-year note for $150,000 on behalf of defendants. McKinney and the bank treated the note as a line of credit, and on January 15, 1975, the due date of the note, a debt of $129,962.72 had been incurred and remained unpaid. The bank notified defendants of the indebtedness, but defendants professed to have no knowledge of the note or of the fact that McKinney had borrowed money in their name. The bank then brought suit against McKinney and defendants. McKinney was subsequently dismissed from the case.

The law of the forum state, Kansas, provides "that the *lex loci contractus* [the law of the place where the contract is made] governs the construction of contracts." *Fagan v. John Hancock Mutual Life Insurance Co.*, 200 F.Supp. 142, 143 (D.Kan.1961). Kansas courts also hold that "a contract is considered 'made' when and where the last act necessary for its formation is done." *Neumer v. Yellow Freight Systems, Inc.*, 220 Kan. 607, 556 P.2d 202, 204 (1976). Here, the powers of attorney were signed by defendants and notarized in their home state of North Carolina. Thus, North Carolina law determines whether McKinney had the unilateral power to borrow money on defendants' behalf.

"One who seeks to enforce against an alleged principal a contract made by an alleged agent has the burden of proving the existence of the agency and the authority of the agent to bind the principal of such contract." *Albertson v. Jones*, 42 N.C.App. 684, 257 S.E.2d 656, 657 (1979). In particular, the bank has the burden of proving that McKinnon had the authority, acting alone, to bind defendants to the loan agreement the bank seeks to enforce.

Because we find no North Carolina law which bears directly on the issue, we

must assume that that state would apply the well-established general rule of agency that "[u]nless otherwise agreed, authority given in one authorization to two or more persons to act as agents includes only authority to act jointly . . . ." *Restatement (Second) of Agency*, § 41(2). Indeed, "when an agency is given to more than one person, it is *presumed* that the principal intended the agency to be joint and to be exercisable only by the unanimous action of the agents." *Keough v. Kittleman*, 74 Wash.2d 814, 447 P.2d 77, 78–79 (Wash.1968). *See Unterberg v. Elder*, 211 N.Y. 499, 105 N.E. 834 (1914). In the powers of attorney executed by defendants, it is clear and unambiguous that "Wallace G. McKinney *and* John C. Shaft" (emphasis added) were appointed as defendants' "attorney-in-fact" (singular). When an instrument is this clear, we will not look to extrinsic evidence to contradict its statement about the principals' intent. Under the quoted presumption, therefore, McKinney's unilateral exercise of the power was unauthorized and could not bind defendants.

AFFIRMED.