**Andrew I. CRAMER, Plaintiff,**

**v.**

**DEVON GROUP, INC., Defendant.**

**No. 90 CIV. 7748 (PKL).**

United States District Court,
S.D. New York.

Sept. 17, 1991.

Pryor, Cashman, Sherman & Flynn, New York City (Andrew H. Bart and Charles B. McKenna, of counsel), for plaintiff.

O'Sullivan Graev & Karabell, New York City (Charles E. Bachman, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge.

In this diversity action plaintiff Andrew I. Cramer ("Cramer") seeks monetary damages, asserting fraud, breach of contract and breach of fiduciary duty by defendant Devon Group, Inc. ("Devon"). This is the second time this matter has come before the Court: an earlier Opinion and Order, dated December 12, 1990, denied plaintiff's motion for a preliminary injunction and temporary restraining order based on these same claims. The matter is now before the Court on defendant's motion for summary judgment.

## BACKGROUND

This case was initially filed in the New York Supreme Court on December 3, 1990. Plaintiff sought a temporary restraining order and preliminary injunction enjoining defendant Devon from calling and holding a special meeting of the Board of Directors of Aztech Document Systems, Inc. ("Aztech"), of which Devon is the majority shareholder; from merging Aztech with Chas P. Young Company ("Young"), another Devon division; from acting outside the normal course of business to change the nature of Aztech's operations; and from making any unilateral decisions on behalf of Aztech. Justice Phyllis Gangel–Jacobs struck the provision enjoining the meeting, but issued a temporary restraining order against the defendant on the other points. Following removal to this Court on December 4, oral argument was heard on December 10. This Court denied the injunctive relief sought by plaintiff and dissolved Justice Gangel–Jacob's temporary restraining order based, *inter alia*, upon plaintiff's failure to demonstrate both irreparable harm and likelihood of success on the merits.

At all times relevant to this action, plaintiff Andrew Cramer was the President and Chairman of the Board of Aztech, a financial printing company, of which he was a founder. In February 1987, pursuant to a Stock Purchase Agreement between the defendant and Cramer (the "1987 Agreement"), Devon, a graphic arts company, became the majority shareholder of Aztech. Subsequent to the 1987 acquisition of Aztech shares from Cramer, Devon loaned considerable sums to Aztech. In March 1989, the parties underwent a restructuring: Devon's Aztech debt was converted into equity, Devon provided additional cash to Aztech, and Cramer was left with only 20 percent ownership of Aztech. As part of the 1989 restructuring, the 1987 Agreement was renegotiated in a Shareholders' Agreement dated March 31, 1989 (the "1989 Agreement"). Under both Agreements Devon had the right to purchase Cramer's shares, and if it did not exercise that right, Cramer had an opportunity to buy out Devon's interest. Although the parties dispute the effect of the 1989 amendments, Cramer concedes that Devon had no obligation to purchase his interest in Aztech. Affidavit of Andrew I. Cramer, sworn to on December 2, 1990, at 5 ("Plaintiff's Dec. 2 Affidavit").

Early in 1990 Devon began to explore the acquisition of some of the assets of Young, another financial printing company then in bankruptcy reorganization. Although Devon completed the acquisition of the Young assets in April 1990, the parties dispute the events leading to the acquisition. The parties agree that, concurrent with the negotiations concerning Devon's purchase of Young, they discussed Devon's buying out Cramer's remaining interest in Aztech. The parties also agree that the purchase of Cramer's shares was never consummated. However, they dispute whether an agreement was ever reached concerning the purchase. In his first cause of action, Cramer alleges that Devon fraudulently induced him to acquiesce in the purchase of Young, based on a false promise to purchase his remaining 20% interest in Aztech. Cramer claims that Devon only intended to buy his Aztech shares if the Young acquisition proved successful; that if the acquisition were unsuccessful, Devon intended not to buy Cramer's shares, but rather to merge the assets of Aztech and Young, rendering Aztech, and Cramer's investment therein, worthless. The second cause of action asserts that Cramer and Devon entered into a

contract in which Devon agreed to purchase Cramer's shares for $1,570,000, and that defendant breached this contract. Defendant responds that it never agreed to purchase Cramer's shares, that Cramer can point to no writing evidencing any agreement that satisfies the statute of frauds, and that there is no evidence to show that it made any promise to Cramer with a then present intent not to honor that promise.

After the 1990 acquisition of Young by Devon, the Young assets, including accounts receivable, work in progress and fixed assets, were transferred to Aztech. The transfer was recorded by adjusting Aztech's books to reflect added assets of $4.63 million, the purchase price of the Young assets. A corresponding liability was added on Aztech's books as an intercompany payable to Devon. Cramer claims that these bookkeeping changes served to commingle Young's liabilities with Aztech's assets; he asserts as his third cause of action that these changes breached covenants included in his 1987 Agreement with Devon. For example, the 1987 agreement barred "any action which would cause Aztech to be operated other than in its normal ordinary course consistent with past practices," and also required maintaining Aztech's accounting procedures. *See* 1987 Agreement ¶ 3.1(a)(xvi) & (xvii). Devon responds that these covenants were superseded by amendments in the 1989 Agreement, and that Cramer consented to any changes that were effectuated.

Plaintiff's fourth cause of action alleges that Devon, as a majority shareholder in Aztech, breached the fiduciary duties it owed to Cramer, a minority shareholder. Cramer claims that by intermingling Aztech's and Young's assets and liabilities, Devon used Young as a vehicle to deplete Aztech's assets and thereby reduce the value of Cramer's investment in Aztech. Devon responds, and plaintiff concedes, that Cramer was enthusiastic about and actively promoted Devon's purchase of Young. In fact, defendant contends that Cramer admits that there was no breach of fiduciary duty. Cramer categorically denies admitting that the transaction was not a breach of fiduciary duty and claims that his opti-

mism was procured by the fraudulent promise of Devon's President, Marne Obernauer ("Obernauer"), to buy Cramer's shares.

Plaintiff's fifth and final cause of action alleges that Devon breached Cramer's employment agreement. Defendant moves for summary judgment on this claim based on an arbitration clause in the employment contract. Although decrying defendant's refusal to adjudicate all of the claims in one forum, plaintiff concedes that the arbitration clause is binding. Therefore, he does not oppose the grant of summary judgment on his fifth cause of action. *See* Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), at 7 n. *.

## DISCUSSION

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The substantive law governing the case will identify the facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.,* 867 F.2d 102, 107 (2d Cir.), *cert. denied,* 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrate the absence of a genuine issue of material fact." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also Trebor Sportswear Co. v. Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989). "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 325, 106 S.Ct. at 2554.

Once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, which " 'must set forth facts showing that there is a genuine issue for trial.' " *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson, supra,* 477 U.S. at 247–48, 106 S.Ct. at 2510. "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & H. Ry. v. Consolidated Rail Co.,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson, supra,* 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)), *cert. denied,* — U.S. —, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.' " *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir.1989) and *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

It is clear that summary judgment should "be refused where the non-moving party has not had the opportunity to discover information that is essential to his opposition." *Anderson, supra,* 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 n. 5. A party should not be " 'railroaded' by a premature motion for summary judgment." *Celotex Corp., supra,* 477 U.S. at 326, 106 S.Ct. at 2554. If inadequate discovery prevents presentation of facts necessary to oppose a summary judgment motion, Fed.R.Civ.P. 56(f) allows a court to deny summary judgment or order a continuance until discovery is complete. To obtain Rule 56(f) relief the party seeking additional discovery must file an affidavit explaining what facts are sought, how they will create a factual issue precluding summary judgment, what efforts have been made to obtain these facts and why these efforts have failed. *See Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir.1989). Other mechanisms for enforcing the right to discovery include motions to compel discovery or for sanctions under Fed.R.Civ.P. 37. This Court has stressed that these mechanisms must be used: a party cannot successfully oppose a summary judgment motion by simply claiming that further discovery may yield unspecified facts that could plausibly defeat summary judgment. *See Bank of America National Trust and Sav. Ass'n v. Envases Venezolanos, S.A.,* 740 F.Supp. 260, 269 (S.D.N.Y.), aff'd, 923 F.2d 843 (2d Cir.1990); *Lawford v. New York Life Ins. Co.,* 739 F.Supp. 906, 917 n. 12 (S.D.N.Y.1990).

II. Merits of Defendant's Summary Judgment Motion

A. Fraud

Cramer's first cause of action claims that defendant induced him to agree to the purchase of the Young assets by fraudulently promising to purchase his 20% interest in Aztech for $1,570,000. Cramer alleges that defendant only intended to buy his Aztech shares if the purchase of Young yielded profits; if the acquisition were unsuccessful, Devon would refuse to buy his shares and merge Aztech and Young, thus rendering Aztech, and Cramer's investment therein, worthless. Devon moves for summary judgment on this cause of action, asserting that Cramer has produced no evidence of an agreement by Devon to buy Cramer's shares and no proof of Devon's fraudulent intent. The burden thus shifts to Cramer, who attempts to show that a factual issue exists by pointing to his allegations and stressing that the issue of fraud turns on intent, making summary judgment inappropriate. Cramer also argues that summary judgment should be denied because he has not had the benefit of discovery.

■ To prove fraud under New York law, plaintiff must show by a preponderance of the evidence that defendant made a misrepresentation as to a material fact that was false and known to be false, that was intended to induce and did induce reliance to plaintiff's detriment. *See Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir. 1987); *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (2d Dept.1980). In essence, "an action for fraud will lie when a defendant makes a promise that he has no present intention of performing." *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 295 (2d Cir.1986) (Friendly, J.); *Rosenthal v. Kingsley*, 674 F.Supp. 1113 (S.D.N.Y.1987).

■ In opposing a summary judgment motion a party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor.... [and] may not rest upon mere allegation or denials of

his pleadings." *Anderson, supra*, 477 U.S. at 256, 106 S.Ct. at 2514. In the case at bar, Cramer fails to present *any* evidence that Devon intended to defraud him. Plaintiff's Response only repeats the unsupported allegations made in his complaint and repeated in his affidavit. *See* Plaintiff's Complaint ¶ 22; Plaintiff's Response, at 11; Plaintiff's Dec. 2 Affidavit, at 6. Plaintiff must also overcome the close nexus between his fraud and breach of contract claims. "[A] fraud claim cannot merely reassert, in another form, a claim for breach of a contract barred by the Statute of Frauds." *See Rosenthal, supra*, 674 F.Supp. at 1126; *Lehman*, 783 F.2d at 295. As Cramer's breach of contract claims are barred by the Statute of Frauds, *see* discussion, *infra*, he must present evidence of more than mere failure by defendant to perform: he must show that defendant had no intent to perform when it formed the alleged contract. *See Rosenthal, supra*, 674 F.Supp. at 1127. However, Cramer has not carried his burden of presenting to the Court even a "scintilla" of evidence beyond the allegations in his pleadings on the issue of intent.

To prevail on his fraud claim, plaintiff must also show that he relied to his detriment on Devon's alleged promise. *See Rosen v. Spanierman*, 894 F.2d 28, 33–36 (2d Cir.1990). Cramer contends that he gave his consent to Devon's purchase of Young in reliance on Devon's false promise to buy his shares. But to prove that giving his consent caused him injury, plaintiff must show that he had the power to prevent the purchase. Cramer asserts that he had this right under the 1987 and 1989 Agreements. *See* Complaint ¶ 10; Plaintiff's Dec. 2 Affidavit ¶ 7. Although he does not refer to specific provisions of the Agreements, his Reply Affidavit, sworn to on December 10, 1990, points to "a few critical protections" remaining after the 1989 amendments. The only relevant protection is found in ¶ 3.1(a)(xii), which prohibits Devon from investing in a business that would compete with Aztech.[1] However, Cramer admits

---

1. There is a clause in the 1987 Agreement requiring Devon to operate Aztech "in its normal, ordinary course, consistent with past practice." *See* 1987 Agreement ¶ 3.1(a)(xvi). However,

that the goal of the Young acquisition was an "expanded printing operation." *See* Plaintiff's Dec. 2 Affidavit ¶ 14. Thus, Cramer has neither alleged nor proved that Devon was competing with Aztech. Thus, besides failing to demonstrate that a genuine fact issue exists concerning Devon's intent to purchase his shares, Cramer also fails to show that he had any right to consent that was given up in reliance on Devon's alleged promise to purchase his interest in Aztech.

■ Plaintiff next claims that summary judgment should not be granted because "where intent or state of mind is at issue, 'summary judgment should be used sparingly.'" *Lawford, supra,* 739 F.Supp. at 913 (quoting *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) (per curiam)). However, in *Lawford* this Court went on to note that, even where state of mind is at issue, summary judgment may be proper "where a plaintiff has failed to make a showing of wrongful intent on the part of the defendant sufficient for a reasonable jury to find for plaintiff on that issue." 739 F.Supp. at 913; *see also Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988) (plaintiff "not entitled to a trial simply because the determinative issue focuses on defendant's state of mind").

■ Cramer next claims that there has not been enough discovery, and that as a result summary judgment must be denied. However, he has neither provided a Rule 56(f) affidavit, nor pointed in his Response to any specific piece of evidence that he expects to discover to prove that Devon made a promise to him that it had no present intent of fulfilling. *See Hudson River Sloop Clearwater, Inc., supra,* 891 F.2d at 422 (Rule 56(f) affidavit required). In addition, Cramer has not moved to compel discovery or for sanctions under Fed. R.Civ.P. 37. Cramer's generalized claim of

insufficient discovery cannot prevail. Therefore, Devon's summary judgment motion on the first cause of action is granted.

**B. Breach of Contract**

Devon premises its summary judgment motion with respect to the second cause of action, for breach of contract, on Cramer's failure to propound a writing or combination of writings satisfying the statute of frauds. By demonstrating the basis for its claim that there is no issue of material fact, Devon moves the burden to Cramer to show that a genuine issue of material fact does exist. Cramer points to two writings in his attempt to satisfy the statutory requirements: an unsigned memorandum and a signed letter from Obernauer to Devon's Board of Directors. *See* Exhibits A & B to Plaintiff's Dec. 2 Affidavit.

■ The substantive law governing this issue is found in N.Y.U.C.C. § 8–319(a):

> A contract for the sale of securities is not enforceable ... unless there is some writing signed by the party against whom enforcement is sought ... sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price.[2]

New York law allows the statute of frauds to be satisfied by a combination of writings. *See Crabtree v. Elizabeth Arden Sales Corp.,* 305 N.Y. 48, 55, 110 N.E.2d 551, 554 (1953). However, to meet the statute of frauds by combining a series of writings, there is a strict threshold requirement: "the signed writing must itself establish 'a contractual relationship between the parties.'" *Horn & Hardart Co. v. Pillsbury Co.,* 888 F.2d 8, 11 (2d Cir.1989) (quoting *Crabtree, supra,* 305 N.Y. at 56, 110 N.E.2d at 554).

■ The two writings propounded by Cramer, both separately and together, fail

---

this clause was amended in 1989 to allow derogation from Aztech's ordinary operating practices in the event of a merger, consolidation or sale of Aztech. *See* 1989 Agreement § 5(g).

**2.** Cramer points out that part performance can take a contract out of the statute of frauds. *See*

Plaintiff's Response, at 14. However, Cramer points to no actions constituting part performance: he does not allege tender of his shares or payment therefor by Devon. Thus, the contract remains within the statute of frauds.

to meet the requirements of N.Y.U.C.C. § 8–319(a). The first writing, dated 3/13/90, is entitled "Computation of Cramer's Buyout," and provides a series of numbers totaling $1,570,000, the amount Cramer alleges Devon agreed to pay for his shares. On its face this writing is only a valuation: it contains no promise to buy Cramer's shares, and is not signed by Devon, the party sought to be charged. Cramer also relies on a February 28, 1990 letter from Obernauer to Devon's Board ("Devon Feb. 28 letter"). This letter, which is initialed by Obernauer, focuses primarily on Devon's contemplated purchase of Young, but contains the following reference to Devon's purchase of Cramer's shares:

Concurrent with [the acquisition of the Young assets] we are considering various alternatives which will allow us to fix the terms for our purchase of the remaining 20% of Aztech. With the changing nature of the company and the industry and our need to adapt and react quickly, the complications of the minority interest and the various options back and forth to buy the remainder are cumbersome and ought to be cleaned up.

The letter says only that Devon is "considering ... alternatives," and that the "complications of the minority interest ... ought to be cleaned up": it does not establish that a contract existed, wherein Devon agreed to buy Cramer's shares.

These writings, both individually and in combination, fail to show that a contract was formed between Devon and Cramer. At best they show that the parties were negotiating a purchase and sale of Cramer's securities. As explained in *Horn & Hardart*, "[i]f the proffered writings permit doubt as to the existence or nature of the contractual relationship, the inquiry is terminated and the agreement deemed unenforceable." 888 F.2d at 11; *see also Trebor Sportswear, supra*, 865 F.2d at 511 ("appellants offered no basis upon which to meet the requirements of the statute of frauds"). Cramer thus fails to show the existence of an issue of fact concerning the statute of frauds defense. Cramer renews his claim of insufficient discovery, and argues that summary judgment must be denied. However, he has failed to supply the affidavit required by Fed.R.Civ.P. 56(f) and has not moved to compel discovery. Therefore, Devon's summary judgment motion on the second cause of action is granted.

### C. Breach of Covenants

Cramer's third cause of action alleges breach of covenants in the 1987 and 1989 Agreements. He alleges that Devon breached the covenants by commingling Young's and Aztech's assets and liabilities after the Young acquisition. Devon moves for summary judgment on this claim, asserting that the covenants were explicitly and implicitly amended by the 1989 Agreement and that Cramer consented to any bookkeeping changes that were made.

■ When a court must interpret contractual language as part of a motion for summary judgment, it focuses on the plain meaning of the language in light of the intent of the parties. *See Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990). The first step in the analysis is to determine if the language itself is ambiguous. *See Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988); *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 460, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590 (1957). Thereafter, the inferences that can be drawn from the language must be examined. "It is only where the language *and* the inferences to be drawn from it are unambiguous that a district court may construe the contract as a matter of law and grant summary judgment accordingly." *Cable Science, supra*, 920 F.2d at 151 (emphasis in original).

Cramer points to two specific covenants in the 1987 Agreement which provide that Cramer and Devon shall, without the other's consent:

¶ 3.1(a)(xvi): not take any action which would cause the business of Aztech to be operated other than in its normal, ordinary course, consistent with past practice;

¶ 3.1(a)(xvii): not take any action which would cause Aztech to apply accounting

principles other than on a basis consistent with the application thereof in preparing the Financial Statements, except to cause changes required by the consistent application of GAAP.

The 1989 Agreement amended ¶ 3.1(a)(xvi) so that the requirement of operating Aztech in its ordinary course would not prevent merger, consolidation, liquidation, dissolution, winding up, or sale of the assets of Aztech. *See* 1989 Agreement § 5(g). However, ¶ 3.1(a)(xvii) was not amended in the 1989 Agreement.

■ Devon's summary judgment motion claims that the language of the covenants is unambiguous. However, this argument is only partially successful. The language of ¶ 3.1(a)(xvi), as amended in 1989, is unambiguous: although Aztech must be operated in its ordinary course, consistent with past practices, this does not prevent Devon from merging it with another company. The merger of Aztech with Young is exactly what is contemplated by the plain language of this covenant, and the language is not susceptible to contrary inferences. Cramer cannot be heard to complain that Devon exercised its contractual right to merge Aztech and Young, and summary judgment as to this claim is granted.

■ Whereas the 1989 Agreement amended ¶ 3.1(a)(xvi), there was no such amendment to ¶ 3.1(a)(xvii). Thus, after the 1989 amendments, Devon was allowed to effect a merger of Aztech with another entity, but was not allowed to change Aztech's bookkeeping to reflect the merger. This apparent contradiction is patently ambiguous, both on its face and in the possible inferences that can be drawn therefrom. Devon contends that the 1989 Agreement "implicitly" amends ¶ 3.1(a)(xvii) by amending ¶ 3.1(a)(xvi) to allow a merger of Aztech. However, this inference is far from obvious, and fails to eliminate the ambiguity in the contractual language. Devon has not carried its burden of showing that the language of this covenant is unambiguous, and that the Court can construe and apply it as a matter of law. *See Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2552.

Given the latent ambiguity resulting from the asymmetrical amendments in the 1989 agreement, this Court will not grant Devon summary judgment and prevent Cramer from proving that the ambiguous contract language was meant to guarantee his right to protect his investment in Aztech.

### D. Breach of Fiduciary Duty

The fourth and final cause of action that this Court must consider asserts breach of fiduciary duty. Cramer claims that defendant assumed a fiduciary obligation towards him by reason of its majority ownership of Aztech and then abused this position of trust by manipulating Aztech's and Young's books and assets. Defendant's summary judgment motion focuses on plaintiff's enthusiasm for Devon's acquisition of Young and claims that plaintiff has admitted that there was no breach of fiduciary duty.

■ There are two primary elements that must be proven to establish a breach of fiduciary duty. First, it must be shown that there is a fiduciary relationship between the parties. *See Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.,* 767 F.Supp. 1220 (S.D.N.Y.1991). Second, it must be shown that the fiduciary duty has been breached. It is well established that majority shareholders engaging in corporate activity owe a fiduciary duty to all other shareholders. *See Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). Giving content to the duty that is owed, however, is a more complex inquiry. To satisfy their fiduciary obligation the majority's actions must be fair, both in the general course of dealing and the specific terms of the transaction. *See Alpert v. 28 Williams St. Corp.,* 63 N.Y.2d 557, 483 N.Y.S.2d 667, 674, 473 N.E.2d 19, 26 (1984); *see also In re Kemp & Beatley, Inc.,* 64 N.Y.2d 63, 484 N.Y.S.2d 799, 804, 473 N.E.2d 1173, 1178 (1984) (corporate fiduciary barred from oppressive actions). As explained by then Chief Judge Cardozo, fiduciary duty involves "something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of

behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928).

It is beyond dispute that comparison of a party's conduct with the fiduciary standard of care is a question of fact. It is also clear that on a summary judgment motion a court's only role is to determine if a genuine issue of fact exists: it cannot assume the role of the jury on a sensitive factual issue like fiduciary duty. *See Anderson, supra*, 477 U.S. at 249, 106 S.Ct. at 2510. For Devon to carry its initial burden on this summary judgment motion and shift the burden to Cramer it must show this Court that there are no factual issues to be resolved. *Celotex, supra*, 477 U.S. at 323–325, 106 S.Ct. at 2552–53. However, Devon has failed in this task.

Devon raises two primary arguments in its motion: first, that Cramer was enthusiastic about the purchase and actively encouraged its consummation, and second, that "Cramer has admitted that the Chas. P. Young transaction was not a breach of fiduciary duty." Defendant's Memorandum of Law in Support of Motion for Summary Judgment Dismissing the Complaint ("Defendant's Motion"), at 11. Although this Court has scoured plaintiff's papers, it finds absolutely no indication that Cramer "has admitted" that there was no breach of fiduciary duty. Devon cannot carry its burden of demonstrating the absence of a genuine issue of material fact by ascribing such an admission to plaintiff. Further, reference to Cramer's public displays of enthusiasm does not eliminate the existence of a factual issue with respect to Devon's allegedly oppressive and unfair activities. This result is especially compelling given Devon's stated intent of cleaning up the "complications" of Cramer's "cumbersome" minority interest. *See* Devon Feb. 28 letter. Therefore, because Devon has failed to carry its burden of showing the Court that there exists no genuine issue of material fact with respect to breach of its fiduciary duty, summary judgment on the fourth cause of action is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in part, denied in part. Summary judgment is granted as to the first, second and fifth causes of action. Summary judgment is denied as to the fourth cause of action and partially granted as to the third cause of action.

SO ORDERED.